## GORTON v. J. B. BEAIRD CORPORATION.
### No. 4483.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1933.

Rehearing Denied July 15, 1933.

Harry V. Booth, of Shreveport, for appellant.

Melvin F. Johnson, of Shreveport, for appellee.

MILLS, Judge.

By the admissions of the parties, this action is reduced to two issues:

(1) Is a roof constructed for defendant company by the Houseman Sheet Metal Works, Inc., whose claim has been acquired by the plaintiff herein, on additional buildings in August and September, 1930, substantially the same as one put on other buildings of defendant by the same roofing contractors in 1928?

(2) In the construction of the new roofing, was larger and dirtier gravel used than was proper, and, if so, does the presence of these conditions render the roof unfit for service?

The case was tried April 26, 1932. At that time the roof had not leaked or in any way proved actually defective.

The 1928 roof was constructed of Barrett's Best roofing felt, guaranteed for twenty years by the contractor. At that time the Barrett Company manufactured three grades of roofing: Barrett's Specification, which was bonded by the company to insure a life of twenty years; Barrett's Best, or B. B., which was inferior in weight and quality to the Specification felt, but which was recognized by the trade as a twenty-year roof, and which was guaranteed as such by the contractors, but not by the manufacturer; Black Diamond, or B. D., which was the same in quality as the B. B., but lighter in weight, and which, when used, made a ten-year roof.

■ The Houseman Company agreed to use on the second job the same quality of roofing that it did on the first, except as to a portion which was to have a ten-year roof, the charge for which is not disputed. It had on hand a sufficient quantity of the B. B. roofing to cover about one-third of the twenty-year job. When the supply was exhausted, a sufficient quantity of the same kind to finish the roof was ordered from the manufacturer. The Barrett Company sent, instead, felt labeled B. D. 14, with the explanation that, because of confusion in the trade caused by Barrett's Best not being its highest grade of felt, it had ceased using that label, and instead was making two grades of B. D., numbered 14 and 12; that No. 14 was identical in every way with the original B. B., No. 12 being used in the ten-year roofing. When this shipment of roofing arrived on the job and before any of it was laid, J. B. Beaird, manager of defendant company, noticing the change in the labels, complained that he was not getting the grade of material contracted for. Houseman explained the situation, and to satisfy all concerned, in the presence of Beaird, weighed a sufficient number of rolls of both B. B. and B. D. 14 to demonstrate that the weight of the rolls, though bearing different labels, was the same. The only difference between the original B. B. and B. D. being one of weight, and the B. D. furnished being shown to weigh the

same as the B. B., we find that the defendant received the same quality of felt on the new job as that used on the old.

Considerable confusion is caused by the fact that at a later date, after the job was completed, the Barrett Company made three grades of Black Diamond instead of two. They were designated No. 15, which corresponded with the original B. B., No. 14, which was lighter, and No. 12, lighter still. In 1931, then, B. D. 14 was not the same as B. B., but in 1930, when the work was done, it was.

■ In laying a roof, a covering of felt is first put on, then a coating of pitch is applied, and over this a generous layer of gravel. The pitch is the heart and life of the roof. The only purpose of the gravel is, by adding weight, to hold the felt down to prevent its blowing up into blisters, and, by sinking into and becoming embedded in the pitch, to prevent this protective covering from, in hot weather, running off. There is always, on good jobs, a surplus of gravel that does not become embedded. The specification for gravel recommended by Barrett Company is 3/8 to 5/8. That used in the present job included some that was larger than 5/8, but the testimony of the expert witnesses for plaintiff is that the larger size, while not making as pretty a job, makes just as good roof. That the graveling was properly done is testified to for plaintiff by Houseman, a practical roof man of twenty-five years' experience, Chalin of seventeen, and Rankin of more than twenty, Byas who hauled the gravel, and Wisner, who laid half of it.

An architect testifying for defendant, who admits that he is not a practical roofing man, says that the job of graveling was a sorry one; that the gravel was loose and dirty. In addition defendant offered three of his employees who went upon the roof shortly before the date of trial and claimed to have cut samples from the various sections of the roofing, which samples were offered in evidence. These witnesses do not pretend to be experts, but testify that the gravel was large, was very dirty, and that it did not, because of the dirt, adhere to the pitch. The value of this testimony is, in our view, greatly lessened by the fact that, after they had been upon the stand, counsel for plaintiff and two experienced roof men who went out to defendant's plant to inspect the roof and to see where the samples had been cut, in order to rebut the testimony of these witnesses as to the condition of the roof at the time of trial, were, upon arrival there, without adequate reason refused permission by Beaird to go upon the roof, being told that they could inspect it from the ground. The roof being flat, it is apparent that it could not be effectively examined from below.

We think the situation is the same as where an injured plaintiff refuses to submit to an examination by defendant's experts, and thereby prevents proper cross-examination and rebuttal. Crutsinger v. B. F. Avery & Sons (La. App.) 146 So. 789.

H. E. Baggett who was in the employ of the Beaird Corporation at the time this work was done, acted as superintendent of it for defendant while Mr. Beaird was away. Baggett says that the only dirty gravel that came upon the job was hauled away when he complained about it; that he saw it loaded and taken off; that the other gravel was not so dirty as to be unfit for use; that he cut the skylight in the roof, and that he considered it a good job; that there is always a lot of loose surplus gravel on a roof; that the large gravel complained of in the case was raked off and thrown away.

We find that defendant was aware of the use of B. D. felt and did not seek to prevent its use; that the gravel was put down under the inspection of Baggett, duly empowered by Beaird to look after the work for him. The large preponderance of testimony, disregarding the testimony of the three employees above referred to, is to the effect that the gravel job was all right; that defendant made substantial payments on the account after the work was completed; that, when approached by two officers of the bank for a settlement of the account, he promised to settle it, assured the felt he got was the same as B. B.; though tendered a letter from the Barrett Company to this effect, he still refused to pay, but offered to compromise the $600 balance by paying $300; that during the time he had the matter up with the bank officials he made no complaint about the gravel work.

Though the length of this opinion is not in proportion to the size of the record, which includes over 300 pages of testimony, many exhibits, and voluminous briefs, we have in fact carefully read and considered every portion of it.

We are always loath to reverse the judgment of the lower court in a question of fact, and regret that in this case we are not favored by a written opinion of the trial judge. The testimony as we view it satisfies us that the judgment appealed from is erroneous.

It is therefore reversed, and judgment is now rendered in favor of the plaintiff, S. L. Gorton, and against the defendant, J. B. Beaird Corporation, in the full sum of $555.-19, with 5 per cent. per annum interest thereon from November 1, 1930, until paid, and all costs of both courts. Defendant's reconventional demand is rejected, with reservation of all his rights under the twenty-year guaranty.